Case number 20-12-57, USA v. Narrion Caston. Oral argument not to exceed 15 minutes per side. Mr. Nelson, you may proceed for the appellant. Thank you. Good morning. May it please the court, Paul Nelson, on behalf of Narrion Caston, and I have reserved four minutes for rebuttal. Very well. Mr. Caston pleaded guilty to possessing two specific 9mm shell casings that were found in his mother's car. At sentencing, the district court overruled his objection to application of a cross-reference under Section 2K2.1C1A for attempted murder, which resulted in a 13-level increase in his base offense level and increased his advisory guideline range from 27 to 33 months up to 110 to 137 months, although there's a 120-month maximum based on the offense of conviction. In reaching that conclusion, the district court relied solely on a statement by Deshaun Alexander, who told the police that Mr. Caston had shot him while they were in neighboring cars. At sentencing, the district court failed to consider the physical evidence that had been produced that cast doubt on whether these two particular shell casings were in fact involved in that offense, in that shooting. Do you agree that the standard of review on appeal now for these challenges is the deferential clear air standard of review because you're really challenging factual rulings? Well, I'd suggest, Your Honor, in light of the decision last year in United States v. Sands that we cited in our brief, that because it's application of facts to the sentencing guidelines, it would be de novo review. But isn't it, so if it's a mixed question, I could see that, but some of these challenges, it strikes me, are pure historical fact-type questions about what actually happened, such as are the two shell casings found in the back seat the same shell casings that Alexander suggests were shot at from the bullets that were shot at? Isn't that a pure fact question? That question, I suppose, would be a fact question. However, our argument is primarily that the district court failed to consider those facts in making the decision on the application of this cross-reference, that there was significant evidence in the record that were, in fact, used as part of this shooting. But is that enough to bear your burden, the fact that there's other evidence that could suggest the district court was wrong? If the standard of review is clear air, don't we have to affirm if the district court's view that the shell casings came from that shooting was a plausible view of the record? Well, that was not a finding made by the district court. The district court did not address the shell casings at sentencing. The district court's decision was based solely on the conclusion that Mr. Alexander's statement was correct, and he had, in fact, been shot by a bullet. At sentencing, the police detective who testified gave pretty significant information to the court that was apparently not considered by the court in reaching its conclusion. First, that the bullet that was removed from Mr. Alexander could have been one of four different caliber bullets, only one of which was a 9-millimeter bullet. It could have been a 38, a 380, or a 357, as well as a 9-millimeter. And the detective testified at the sentencing that she did not know, that we did not know, whether the bullet that was removed from Mr. Alexander came from one of those two shell casings. And she didn't know that if the casings were from bullets that were fired, counsel, when you say didn't consider, I mean, isn't, there's another way to say that just didn't weigh that evidence the way you would have weighed it, maybe if you were the judge. In other words, all this evidence was presented to the judge, and especially at sentencing, where we're quite deferential to the judges conclude the judge weighed it one way. And I think to follow up on Judge Murphy's question, you're just saying he should have weighed it differently. Well, I think in some situations, I think, but the court has to make clear, has to present a record that the court considered the party's arguments. And I think just total silence on this issue is not sufficient to show that the court considered this evidence in reaching the conclusion that it did. The court had no mention, I'm sorry. I mean, every fact presented to the, every fact presented to the judge, the judge had in her opinion, or his opinion has to then recite each fact and how it weighed each specific fact presented. That doesn't seem like our normal approach, but. Well, I think that it's not every fact, but this was a significant fact. It was a significant factor in the argument made on behalf of Mr. Kastner at sentencing, that these bullets were that the bullet that shot him and that were not from these shell casings, that that's not just some fact that was thrown out there that the court didn't address. I think this was a very significant fact and it was central to the argument that was raised on behalf of Mr. Kastner. And again, in addition to the fact that the police officer testified that we could not tell whether the bullet that were shot at Mr. Kastner came from these shell casings or that the bullet that was removed from him came from the shell casings, that she did testify eventually that the location of the shell casings found in the car, I think cast some doubt on whether those shell casings were involved in the shooting at all. That one shell casing was found underneath the floor mat behind the driver's seat and the officer acknowledged that it would have had to move through some debris to get to the location where it was found and the other shell casing was under the back seat and it was not located until the crime scene technician removed the back seat cushion and found the shell casing underneath it. So, I think that those facts in addition show that there's some likelihood that those shell casings had been in the car for some period of time. That still goes back to you're just disputing the facts. It's the some likelihood, yes, that maybe that would be enough evidence for the district court to have found that these shell casings were not the ones used. But I think I understand your point now to be that the district court never specifically said these specific shell casings were the specific shell casings used in the shooting that Alexander described. But isn't that kind of, it's a required finding in order to apply this enhancement. So, it seems to me that's absolutely what the district court found by applying the enhancement unless your claim is that the district court was under the state and impression that these shell casings did not need to be used in that shooting. That's not specifically, the latter is not specifically the argument. Although, again, on the record that we have here is so sparse. I mean, it's totally devoid of any discussion about these shell casings. So, any attempt to try to define what the court, how the court considered them, if the court, in fact, did consider these is just sheer speculation. And again, and that's in terms of, you know, even going back to the Knatzer case back quite a few years ago, 514 F 3rd 508 at 524, that the court has to set forth enough to satisfy the appellate court that it considered the party's arguments and had a reason basis for reaching its legal conclusion. And here, without any discussion about these shell casings, I mean, that's the critical element of this enhancement. It's required that the shell casings that were, that he pleaded guilty to, that he was convicted of possessing, were the shell casings from which the bullets were fired at Deshaun Alexander. So, I think. Oh, go ahead. I'm sorry. And I think that the, that I was not able to find any cases where the court dealt with a relevant, a significant relevant fact at issue that upheld the district court's decision based on total silence on the speculation as to whether the district court actually considered this and reaching a conclusion that it did. Mr. Nelson, could you address the issue of the hearsay issue of the statements of the witness who was unavailable regarding the identity of the perpetrator as to whether it was your client, the propriety of the court, utilizing those hearsay statements? Well, I think that technically hearsay is not prohibited at sentencing, but it has to be, it has to have a reasonable reliability. And again, here, there's nothing other than his statement that it was Narion Kasten. And although he recognized, he indicated that he recognized Mr. Kasten, he recognized the car, that's information that he had prior to this time. Anyhow, that they had a relationship, they'd known each other for some period of time. And so that does not necessarily make it that much more reliable. The fact when he just pointed out Mr. Kasten, and again, the fact that he refused to testify at the preliminary exam, and he did not testify at sentencing, I think, shows the weakness of his statement. I see that my time has expired. All right. We'll hear from the government. Ms. Lane. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Erin Lane, and I represent the United States. Your Honors, there are two issues on appeal here this morning. First, whether the district court clearly erred when it found that a preponderance of the evidence in the record established that the defendant, Narion Kasten, used or possessed the ammunition named in the indictment in the shooting of Deshaun Alexander, thus meriting the application of the attempted murder base offense level under the firearm guideline cross-reference provision. And second, whether, if the application of the cross-reference provision was warranted, the district court erred in applying attempted murder rather than aggravated assault. Turning to the first issue, looking at all of the evidence in the record as a whole, the district court did not err in finding that a preponderance of the evidence in the record established Mr. Kasten used the ammunition named in the indictment in the shooting of Deshaun Alexander. How would you respond to the point that there's just no finding one way or the other that shell casings found in the car came from the bullets that were used to shoot at Alexander? Your Honor, there is no evidence in the record establishing that the bullet that was removed from Deshaun Alexander's leg was shot from the shell casings that were recovered in the vehicle. By that I mean there's no physical evidence tying that bullet to those shell casings because there was no firearm that was recovered in this case. That was a point of discussion at the sentencing hearing. There is a multitude of other evidence in the record which ties the two shell casings removed from the Pontiac Bonneville belonging to the defendant's mother that tie those ammunitions to the shooting of Deshaun Alexander. Primarily, as the defense just discussed, there's the eyewitness identification of the shooting victim naming, without hesitation and without caveat, Narion Kasten as his shooter. This information was Mr. Alexander also provided details to detectives, which was conveyed at sentencing, about the type of firearm Mr. Kasten used in the shooting, specifically saying that it was a black colored semi-automatic handgun, and that Mr. Kasten was driving a gray Pontiac Bonneville at the time of the shooting. Detectives, as the testimony explained in the sentencing hearing, were able to corroborate that statement by finding that Mr. Kasten's mother had, and has potentially, a Pontiac Bonneville registered to her. Hours after the shooting, detectives went to the house of the defendant's mother and found a gray Pontiac Bonneville parked outside. The defendant's mother was home, detectives spoke with her, and she admitted that her son, the defendant, had possession of the Pontiac Bonneville that day, the day of the shooting. She also admitted that there is only one set of keys to that vehicle. She gave officers permission to shoot the car, excuse me, to search the car, and a crime scene technician recovered the two pieces of ammunition named in the indictment. Additionally, as what you would agree that under the enhancement here, it is those specific, that specific ammunition that has to have been used in the other crime? That is correct, your honor. And so there's plenty of, I would agree with you, if there is, if clear air is the standard of review, that there's plenty of evidence to support that that is the case, including the hearsay of Alexander, but what of the claim that the district court just maybe misunderstood that there had to be this connection, and if the district court just found as a fact that he committed this crime, that would be insufficient. That might be sufficient for a related enhancement, but not for this one. Your honor, I think it's incorrect that the district court did not discuss the two specific pieces of ammunition named in the indictment. Looking at page ID 214 to 219 in the sentencing record, you can see the defense counsel, Mr. Kazer, arguing to the court that the two specific pieces of ammunition found in the vehicle are not tied to the shooting of Deshawn Alexander, and need to be tied in order to warrant this enhancement. The district court recognized that argument, but instead concluded based on all of the evidence in the record that, I believe the court said, I have a very difficult time, this is page 219, I have a very difficult time finding anything that indicates the scoring is in any way incorrect, and that's after having the discussion about the specific pieces of ammunition needing to be tied to the shooting in order to warrant that enhancement. Would you agree, to follow up on your friend on the other point, that the district judge didn't expressly acknowledge then the ammunition of the casings, and how he started at a blanket rejection of all the arguments. Would you agree that he didn't expressly address the argument that Mr. Nelson basically pushed this morning, and in your knowledge was pushed in the district court? So, your honor, I am looking again at the sentencing record. Judge Neff, I don't see her parsing out each piece of evidence that I just laid for this the judge saying that looking at a totality of the evidence in the record, which included a recognition that there was no physical evidence tying the bullet removed from the victim's leg to the ammunition recovered in the car, yet there were other pieces of evidence. I see the judge making her finding based on the totality of the evidence in the record, the findings in the of both counsel at sentencing hearing. That is how the judge made her final determination. And then, of course, as this court is well aware, even if there are two permissible views of the evidence, the district court's choice between those two views cannot be clearly erroneous. And here, confronted again with a totality of the evidence in the record, Mr. Kasten cannot establish that the court clearly erred when it found by a preponderance of the evidence that the ammunition named in the indictment was used in the shooting of Mr. Alexander. And unless there are further questions on that issue, I can move on to the second issue, which defense didn't bring up on oral argument, but is a large component of their brief. Okay, so turning to the second argument, whether the district court erred in applying the attempted murder provision rather than aggravated assault. Again, the court did not err in making its decision. In order to prove attempted murder for guideline purposes, the government must show and the necessary intent for the criminal activity. Here, that would be malice of forethought and took substantial steps in furtherance of that crime. Do you think, I was a little confused by that argument. You cite Milton, but that's murder, not attempted murder. And I guess malice of forethought can be undertaken recklessly. So it's called depraved heart murder, I believe is the common phrase. But I thought that the Supreme Court suggested that when we're talking about attempted murder, that it's actually a higher mens rea, that it has to be the specific intent to murder. So you can, you can commit murder without having the specific intent, but to commit attempted murder, you have to have specific intent. And I wonder if you could talk about that a little bit because I certainly certainly are. So the government's position is not that the inference, which is that the defendant grossly deviated from a standard of care such that he or she must have been aware of the risk of serious bodily injury or death is alone is enough to establish intent to kill. Rather that the inference, like, like many inferences in the law, in conjunction with other facts, in this case, the facts that the district court found in the record are sufficient to establish an intent to kill in order to apply the cross reference provision in the Braxton case. So just to just to clarify, so you definitely then I can see that you need a specific intent to kill, which may not necessarily be satisfied by malice of forethought, which could be that the Supreme Court in Braxton did make that clear that in analyzing the issue in dicta, the Supreme Court stated that intent may be inferred by an actor's conduct in the circumstances, but specific intent is required. And here, the facts that the district court found show that Mr. Kasten did possess the necessary intent in that he grossly deviated from a leg. He knowingly and intentionally pointed a gun at the car Mr. Alexander was driving, shot into that vehicle multiple times, and struck Mr. Alexander in the leg. This court has consistently found malice of forethought in similar scenarios. In the Snowden case, where the defendant shot through a wall at his girlfriend multiple times, not striking the victim in that case, the district court upheld the application of attempted murder for guideline purposes. In Viney, when the defendant pointed a gun at the victim, the victim slapped the gun away, and the defendant shot the weapon to the side multiple times, I think twice in close succession, the court upheld the application of the attempted murder cross reference provision. And of course, the case here is even more egregious, because Mr. Kasten actually struck Deshaun Alexander in the leg after shooting multiple times into the car Mr. Alexander was driving. The district court again, carefully considered all the findings in the presentence report, and all the evidence at the sentencing hearing, when it determined that Mr. Kasten possessed malice of the specific intent necessary to uphold the cross reference provision. In sum, it was not clear error for the district court to take the combination of facts before it, and to conclude that Kasten had the intent to kill, and the court clearly indicated that it felt that the record was sufficient here to support the attempted murder reference. And unless the court has further questions, I'll yield the rest of my time. All right, we'll hear rebuttal. I think you're on mute. Sorry about that. With regard to aggravated assault, I think it's clear and is that the there does have to be a finding on a specific intent to kill. And as was pointed out at sentencing, and also in our brief, that particularly the location of the shots in the, in Mr. Alexander's, the bullet holes in Mr. Alexander's SUV, all low on the door, don't show that there was a specific intent to kill. I think that in these cases show that that shooting at someone is not necessarily enough to establish that, that the court, that there has to be a finding of the specific intent to kill. And again, as far as clear error is concerned, I think at most, the findings that made by the district court, that the facts would support a finding that there was a shooting, but again, that there's has to be a link between these two specific shell casings and the shooting. And as we explained, and I think that, that there just is not that link. And again, the most significant factor in that is that the police say that the slug pulled out of Mr. Cat or excuse me, Mr. Alexander's leg could have been one of four different caliber bullets, three of which are not a nine millimeter. And so three of which would not match up with the shell casings that were found in, in Mr. Caston's car. And I think that. Counselor, you're, you're contesting that based on the shell casings and whether the shell cases that were found were from the gun used by your client in the shooting. You, you're contesting the accuracy that those casings came from the gun or whether there was sufficient evidence that those casings came from the gun used in the shooting that those casings should be attributed to your client. And, but we also have the identification of your client as the shooter by Mr. Alexander. I understand we could use, that the court's entitled to use hearsay statements that sentencing and that sort of thing. But if you're contesting the, whether your client possessed the casings, doesn't that also mean that you're contesting the hearsay identification of your client? You're, you're contesting the propriety of the court taking into account the, the hearsay statements sentencing, identifying Mr. Caston as the shooter? Well, I think that's, that's implicit in our argument that Mr. Caston never admitted to having shot at Mr. Alexander. And again, unfortunately, I suppose to look at it that way, that the, the fact that the, that hearsay is allowed and there has to be, but there has to be some showing of reliability. I'm not sure that there was any showing, sufficient showing of reliability here, but the bottom line, I think, as far as this enhancement is concerned, that even if there was a shooting and even if Mr. Caston shot at him, that in order for that enhancement to apply, that those two shell casings had to be in, had to be the shell casings from which the bullets were launched, that were shot at Mr. Caston. And there's just no way to tie those bullets to that In order to make the argument that you're making about the shell casings, don't you also have to argue, or perhaps you are arguing that this is not the sort of situation where this sort of hearsay under these factual circumstances should, should have been taken into to account by the judge at the sentencing, that this hearsay is distinctly or unusually unreliable and doesn't even rise to the level of the kind of hearsay that should be acceptable to the court for sentencing purposes, because of the identification of the defendant as the shooter is sufficient. That also makes your argument about the shell casings less persuasive. To me, the two issues are somewhat tied together. What do you have to say about that? Well, I think that that, and it was argued at sentencing, the fact that Mr. Alexander failed to appear in response to a subpoena to testify at a preliminary examination in state court, when Mr. Caston was charged with, was charged with attempted murder, based on this, on this shooting. I think that casts some doubt, casts significant doubt on the veracity of, of Mr. Alexander's statements. But I still think, again, and I understand what you're saying, Your Honor, but I think that they're not so intertwined that, again, if there were three shots apparently were fired, that in order for this to apply, that two of those shots would have to have been involved, these two specific shell casings, and there's just no evidence tying those things to that shooting. All right, anything further? Are you, well, you're out of time, so I guess not. All right, well, thank you for your arguments, and the case shall be submitted.